UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PATRICIA E. FENWICK, | CASE NO. 1:14CV2581 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| CAROLYN W. COLVIN,[1] ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

Plaintiff Patricia E. Fenwick ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. In her brief on the merits, filed on May 4, 2015, Plaintiff claims that the administrative law judge ("ALJ") erred in his decision because he failed to abide by the treating physician rule and incorrectly evaluated Plaintiff's pain and symptoms. ECF Dkt. # 16 at 1. Defendant filed a response brief on June 2, 2015. ECF Dkt. #17. Plaintiff filed a reply brief on June 16, 2015. ECF Dkt. #18.

For the following reasons, the Court AFFIRMS the ALJ's decision and DISMISSES the instant case with prejudice.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on May 31, 2011 and June 30, 2011, respectively. (ECF Dkt. #11) Tr. at 27.[2] These claims were denied initially and upon reconsideration. *Id.* at 17.

---

[1] On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security, replacing Michael J. Astrue.

[2] All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than the page numbers assigned when the Transcript was compiled. This allows the Court to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

Plaintiff then requested a hearing before an ALJ, and her hearing was held on May 23, 2013. *Id.* at 12, 45.

On June 24, 2013, the ALJ denied Plaintiff's applications for DIB and SSI. Tr. at 14. The ALJ found that the Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016. *Id.* at 19. Continuing, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 2010, the alleged onset date. *Id.* The ALJ determined that Plaintiff suffered from the following severe impairments: migraines; Behcet's syndrome; facet arthritis; neuropathy of the hands and feet; chronic low back pain; lumbar degenerative disc disease; fibromyalgia; Lupus; obesity; and costochondritis. *Id.* at 20. Following his analysis, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 23. After considering the record, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that Plaintiff must be allowed to sit or stand alternatively, provided that Plaintiff not be off-task for more than ten percent of the work period. *Id.* at 24. Additionally, the ALJ indicated that Plaintiff had postural limitations that precluded the climbing of ladders, ropes, or scaffolds, and allowed only occasional climbing of ramps and stairs. *Id.* Continuing, the ALJ stated that Plaintiff was limited to occasional balancing, stooping, kneeling, crouching, or crawling, and occasional use of her bilateral extremities for the operation of foot controls. *Id.* The ALJ also limited Plaintiff to frequent use of the bilateral upper extremities for reaching, handling, and fingering. *Id.* Plaintiff was also placed under an environmental limitation to avoid all exposure to hazards such as moving machinery and unprotected heights. *Id.*

Next, the ALJ determined that Plaintiff had no past relevant work. Tr. at 29. The ALJ stated that Plaintiff was an individual closely approaching advanced age since Plaintiff was fifty years old on the alleged disability onset date. *Id.* The ALJ stated that Plaintiff had at least a high school education, and that the transferability of job skills was not an issue because Plaintiff did not have past relevant work. *Id.* Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in the national economy that Plaintiff could perform.

*Id.* In conclusion, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from January 1, 2010 through the date of the decision. *Id.* at 30.

A request for review of the ALJ's decision was filed with the Appeals Counsel on August 23, 2013. Tr. at 12. This request for review was denied. *Id.* at 6. At issue is the decision of the ALJ dated June 24, 2013, which stands as the final decision. *Id.* at 14.

On November 24, 2014, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. Plaintiff filed a brief on the merits on May 4, 2015, posing the following questions to the Court for resolution:

> 1. Whether the administrative law judge erred in failing to provide good reasons for the weight he gave to the opinion of Treating Physician Snyder as is required under Social Security's own rules and regulations as well as caselaw?
>
> 2. Whether the administrative law judge erred in his evaluation of pain and fatigue where he looked for objective evidence of the pain and failed to consider the factors described in the regulations in his evaluation?

ECF Dkt. #16 at 1. Defendant filed a response brief on June 2, 2015. ECF Dkt. #17. Plaintiff filed a reply brief on June 16, 2015. ECF Dkt. #18.

## II. SUMMARY OF RELEVANT MEDICAL EVIDENCE

The medical evidence shows that Plaintiff has experienced pain related to lupus since September 2008, and that Plaintiff was reporting lower back pain and pain in her left hip during December 2009. Tr. at 707-20. In February 2010, Plaintiff began visiting her treating physician, Roger Snyder, M.D., continuing to complain of lower back pain. *Id.* at 364. In April 2010, Dr. Snyder opined that Plaintiff suffered from lupus and chronic hip pain. *Id.* at 363.

Plaintiff began visiting Alexandra Villa-Forte, M.D., M.P.H., on April 27, 2010. Tr. at 419. Progress notes prepared by Dr. Villa-Forte on May 2, 2010 indicate that Plaintiff's symptoms began after she gave birth to her daughter two years before the visit and consisted of significant fatigue, pain in both legs, depression, vaginal ulcers, and joint pain in her hips and shoulders. *Id.* at 419. Dr. Villa-Forte indicated that Plaintiff had a few symptoms and signs that may have been suggestive of lupus, but stated that she did not possess any records to confirm all of the information regarding Plaintiff's serology and low platelets. *Id.* at 420. Dr. Villa-Forte opined that Plaintiff suffered from

"possible" lupus, vaginal ulcers, Raynaud's disease, a possible history of testing positive for antinuclear antibodies, joint pain and swelling, and fatigue. *Id.* at 420-21.

On September 27, 2010, Dr. Snyder indicated that Plaintiff was "doing pretty good" and that Plaintiff was still suffering from lupus, Behcet's syndrome, and hypertension. *Id.* at 452. In July 2011, Plaintiff again visited Dr. Snyder, who determined that Plaintiff continued to experience pain in her back, legs, and foot, and continued to suffer from lupus, fibromyalgia, hypertension, and depression. *Id.* at 456.

On September 7, 2011, Plaintiff returned to Dr. Villa-Forte's office and was noted to have had joint pain in her ankles, hips, and knees. Tr. at 481. Dr. Villa-Forte stated that Plaintiff had symptoms in the past that suggested mild lupus, but had not had any symptoms recently. *Id.* at 482. Plaintiff was prescribed an anti-depressant and instructed to inform Dr. Villa-Forte if she experienced any new symptoms. *Id.*

In January 2012, Plaintiff underwent a neurosurgical evaluation performed by Michael J. Mervart, M.D. Tr. at 668. Dr. Mervart stated that there was no point tenderness over Plaintiff's spine, flexion was thirty degrees, and extension was ten degrees. *Id.* Dr. Mervart stated that Plaintiff had a full painless range of motion of her hips and could perform full straight leg raises. *Id.* The neurological examination revealed normal muscle bulk, tone, and power, and showed that Plaintiff's sensation was intact. *Id.* Dr. Mervart opined that the burning pain at the bottom of Plaintiff's feet may have been caused by an autoimmune-related peripheral neuropathy.

On February 21, 2012, Plaintiff was seen by Lynn M. Gaddie, C.N.P. Tr. at 656. Nurse Gaddie indicated that x-rays of Plaintiff's spine showed minimum grade-one anterolisthesis of L4 and L5. *Id.* at 659. There was no evidence of pathologic marrow infiltration or prior fractures and the posterior elements were normal in morphology and alignment. *Id.* An annular tear/fissure was noted at L5-S1. *Id.* On February 28, 2012, Plaintiff underwent a lumbar epidural steroid injection. *Id.* at 653. On March 6, 2012, Nurse Gaddis performed a follow-up examination, and found that Plaintiff still suffered from lower back pain radiating into her right hip and leg. *Id.* at 648. Plaintiff rated the pain as a seven out of ten when walking. *Id.* Nurse Gaddis also found Plaintiff's strength in her upper and lower extremities to be five out of five, symmetrical deep tendon reflexes in

Plaintiff's upper and lower extremities, negative nerve root tension signs, and negative straight leg raise tests. *Id.* at 648-49.

Plaintiff continued to experience lupus flare-ups manifested by vaginal ulcers into March 2012. Tr. at 515. Dr. Villa-Forte indicated that Plaintiff's lupus was moderately controlled, but not to the extent hoped. *Id.* at 519. On March 19, 2012, Aamir Hussain, M.D., performed an electromyography study of Plaintiff's lower extremities and opined that Plaintiff's reflex response was lower in amplitude on both sides, and that she experienced few chronic axon loss changes and complex repetitive discharges in the left lower paraspinal muscles. *Id.* at 651. Dr. Hussain indicated that these findings may be related to an intraspinal canal lesion affecting the left L5 and S1 motor roots or segments, but were insufficient for the definite diagnosis of lumbrosacral motor radiculopathy. *Id.* There was no evidence of a generalized sensorimotor polyneuropathy affecting the lower extremity. *Id.*

On March 26, 2012, Plaintiff reported to Dr. Snyder that she had been given an epidural that caused a migraine headache, so she could not have any more epidural procedures. Tr. at 506. In April 2012, Dr. Mervart opined that magnetic resonance imaging ("MRI") of Plaintiff's lumbar spine showed grade one spondylolisthesis at L4-L5 on Plaintiff's left side. Dr. Mervart recommended self-administered exercises and strengthening, as well as "pain management for consideration of epidurals," with surgery being a possibility if these measures were unsuccessful. *Id.* at 663-64.

On May 4, 2012, Plaintiff underwent a lumbar facet medial branch nerve block. Tr. at 641. Both Plaintiff's pre-procedure diagnosis and post-procedure diagnosis indicated that Plaintiff experienced lumbrosacaral spondylosis without myelopathy and facet arthritis of her lumber region. *Id.* at 641-42. In July 2012, Plaintiff underwent a facet radiofrequency ablation after describing her pain level as four (presumably out of ten) and indicated that previous ablation procedures had halved her pain level. *Id.* at 735. On September 3, 2012, Dr. Villa-Forte indicated that Plaintiff experienced recurrent, painful vaginal lesions as frequently as once a month, but on average every two months. *Id.* at 790. Dr. Villa-Forte also indicated Plaintiff had skin lesions, pain in her wrists, fingers, and knees, and experienced significant fatigue. *Id.* In December 2012, Plaintiff reported

-5-

to Dr. Snyder that her pain had decreased after the ablation, but that she was experiencing pain in her wrist and thumb, and a burning in her hand. *Id.* at 725. Dr. Snyder opined that Plaintiff suffered from facet arthritis, neuropathy in her hands and feet, and hypertension. *Id.*

In February 2013, Plaintiff visited Dr. Snyder and stated that the ablation had worn off. Tr. at 723. Dr. Snyder opined that Plaintiff experienced memory loss, most likely associated with her anxiety, medications, and pain, in addition to experiencing chronic lower back pain and lupus. *Id.* On March 1, 2013, Plaintiff underwent a MRI. Tr. at 744. The MRI showed no abnormalities, but did show a mild burden of nonspecific white matter change that was likely the sequela of chronic small vessel ischemia. *Id.*

On April 20, 2013, Dr. Snyder completed a Medical Source Statement limiting Plaintiff to standing for fifteen minutes at one time and sixty minutes in a workday, and sitting for thirty minutes at one time and for four hours in a workday. Tr. at 731. Dr. Snyder opined that Plaintiff could lift twenty pounds occasionally and five pounds frequently. *Id.* Further, Dr. Snyder stated that Plaintiff could occasionally stoop and handle with both hands, frequently finger with both hands, and occasionally reach with both upper extremities, but never balance. *Id.* Dr. Snyder opined that Plaintiff should never work around dangerous equipment, could occasionally operate a motor vehicle and tolerate cold, and could constantly tolerate heat, dust, smoke, or fumes exposure. *Id.* According to Dr. Snyder, Plaintiff would need to elevate her legs for one hour during an eight-hour workday, and would need to lie down for two hours in an eight-hour workday. *Id.* Dr. Snyder stated that Plaintiff experienced extreme pain resulting from lupus, fibromyalgia, facet arthritis, and neuropathy. *Id.* at 732. Continuing, Dr. Snyder indicated that Plaintiff's medications, pain, and memory loss would frequently affect her attention and concentration, but did not indicate how many days per month Plaintiff would be absent due to her symptoms. *Id.* Finally, Dr. Snyder stated that Plaintiff was in constant pain from her conditions, was only able to tolerate very limited gainful employment where she could set her own hours, was limited to less than fifteen hours per week, would be able to adjust position at will, and where the employment would not be endangered by limited memory or problems with her ability to focus. *Id.*

-6-

### III.     SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

The ALJ determined that Plaintiff suffered from the following severe impairments: migraines; Behcet's syndrome; facet arthritis; neuropathy of the hands and feet; chronic low back pain; lumbar degenerative disc disease; fibromyalgia; Lupus; obesity; and costochondritis. Tr. at 20. The ALJ determined that Plaintiff suffered from hypertension, but that her hypertension did not constitute a severe impairment because there was no evidence supporting end organ damage, Plaintiff responded well to medication, and there was no evidence to support more than minimal functional limitations as a result of the impairment. *Id.* Plaintiff's stress incontinence was found to be non-severe because there was no evidence to support that it caused more than minimal functional limitations. *Id.* The ALJ indicated that the evidence on the record demonstrated that Plaintiff had sleep apnea, but there was no evidence to support more than minimal functional limitations as a result. *Id.* at 20-21. The same analysis was applied to Plaintiff's hyperthyroidism and hyperlipidemia. *Id.* at 21.

The ALJ discussed Plaintiff's memory loss and the relevant medical opinions, and found that it was not a severe impairment because memory loss did not cause more than minimal limitations in Plaintiff's ability to perform basic mental activities. *Id.* at 21-22. In making this determination, the ALJ considered Plaintiff's activities of daily living, social functioning, concentration persistence, or pace, and decompensation. *Id.* at 22. The ALJ found that Plaintiff had mild limitations in her activities of daily living. *Id.* As examples, the ALJ cited Plaintiff's indication that she did the cooking, cleaning, and laundry, went grocery shopping, had a checking account, worked part-time, and used a computer to access emails and Facebook. *Id.* Additionally, the ALJ noted that Plaintiff was able to care for her personal needs, shop, handle money and bank accounts, crochet, and read. Plaintiff was also involved in photography and photo editing a couple of times per week. *Id.* The ALJ also determined that Plaintiff had mild limitations in the area of social functioning. Plaintiff watched television and spent time on social media daily, spent time on the phone three to four days per week, attended church three times per month, got along well with supervisors and co-workers, and denied having difficulty with supervisors or following directives. *Id.* The ALJ also determined that Plaintiff had mild limitations in the area of concentration, persistence, or pace because she:

appeared to be of average intelligence; did not appear to have any difficulty understanding, remembering, and carrying out simple to moderately complex instructions in the workplace; displayed good attention and concentration throughout the evaluation; did not display psychomotor agitation or restlessness; and was able to maintain focus without any difficulty. *Id.* Finally, the ALJ found that Plaintiff had experienced no periods of decompensation that had been of extended duration. *Id.* at 23.

Next, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equalled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at 23. Specifically, the ALJ looked to Listing 1.04 (disorders of the spine), Listing 11.14 (peripheral neuropathies), Listing 14.02 (systemic lupus erythematosus), and Listing 12.04 (affective disorders). *Id.* at 23-24. Additionally, the ALJ determined that Plaintiff's obesity contributed to her muskoskeletal and respiratory impairments, and significantly limited her physical ability to do basic work functions. *Id.* at 24.

Based on the analysis described above, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that Plaintiff must be allowed to sit or stand alternatively, provided that Plaintiff not be off-task for more than ten percent of the work period. *Id.* at 24. Additionally, the ALJ indicated that Plaintiff had postural limitations that precluded the climbing of ladders, ropes, or scaffolds, and allowed only occasional climbing of ramps and stairs. *Id.* Continuing, the ALJ indicated that Plaintiff was limited to occasional balancing, stooping, kneeling, crouching, or crawling, and occasional use of her bilateral extremities for the operation of foot controls. *Id.* The ALJ also limited Plaintiff to frequent use of her bilateral upper extremities for reaching, handling, and fingering. *Id.* Plaintiff was also placed under and environmental limitation to avoid all exposure to hazards such as moving machinery and unprotected heights. *Id.* When explaining how he made the RFC determination, the ALJ provides a lengthy analysis of the medical record and Plaintiff's own representations regarding her impairments. *Id.* at 24-29. A summary of the medical evidence has been provided above, and need not be restated here, however, specific medical evidence mentioned by the ALJ will be discussed below when the undersigned addresses the arguments put forth by Plaintiff and Defendant.

-8-

The ALJ found that Plaintiff had no past relevant work, was an individual closely approaching old age on the alleged disability onset date, had a high school education, could communicate in English, and that transferability of job skills was not an issue because Plaintiff had no past relevant work. Tr. at 29. Continuing, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform. *Id.* This determination was made after the vocational expert ("VE") testified that an individual with Plaintiff's limitations would be able to perform light, unskilled occupations, such as production inspector, packer, and assembler. *Id.* at 30. Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from January 1, 2010 through the date of the ALJ's decision. *Id.*

## IV. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. §§ 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole,* 661 F.3d at 937 (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (internal citations omitted)).

## VI. LAW AND ANALYSIS

### A. Assignment of Error One

Plaintiff's first assignment of error asks:

> Whether the administrative law judge erred in failing to provide good reasons for the weight he gave to the opinion of Treating Physician Snyder as is required under Social Security's own rules and regulations as well as caselaw?

ECF Dkt. #16 at 1.

-10-

Plaintiff asserts that, based on treating physician Dr. Snyder's Medical Source Statement prepared on April 20, 2013, Plaintiff is disabled. ECF Dkt. #16 at 13-14. To support this position, Plaintiff argues that, when considering the weight to afford Dr. Snyder's opinion, the ALJ looked to the supportability and consistency of Dr. Snyder's opinion, but failed to consider, for example, the nature and extent of the treatment relationship, in violation of 20 C.F.R. §§ 404.1527(c) and 416.927(c). Continuing, Plaintiff asserts that the ALJ's analysis of the supportability and consistency of Dr. Snyder's opinion are couched in only vague terms. *Id.* at 15-16. Plaintiff takes issue with the ALJ's determination that she remained "fairly stable with medication," and cites to changes in the dosage of medication prescribed to Plaintiff, some complications about medicine intolerance, and Plaintiff's lupus and back problems. Plaintiff claims that the ALJ's decision "is silent as to how these objective tests undermined the opinion of Dr. Snyder." ECF Dkt. #16 at 16-17. Finally, Plaintiff argues that the ALJ's failure to discuss the factors he relied upon in crediting the opinions of non-examining physicians, who did not have the benefit of the treating physician's opinion, and that this lack of specificity precludes meaningful appellate review. *Id.* at 17.

Defendant argues that the ALJ considered Dr. Snyder's treatment history at length in his decision, and ultimately assigned little weight to the opinion because he found that it was not supported by the medical evidence as a whole or by Dr. Snyder's own progress notes. ECF Dkt. #17 at 12. To support this claim, Defendant points to numerous portions of the ALJ's decision where the ALJ considered Dr. Snyder's opinion, other objective medical evidence, and prescribed treatments and imaging studies. *Id.* at 13-14. Defendant asserts that the ALJ did not substitute his opinion for that of the medical sources on the record because several state reviewing physicians reviewed the medical record and opined that Plaintiff could perform a light range of work, and the ALJ was entitled to rely on these opinions as support for his decision. *Id.* at 14-15 (citing SSR 96-6p; *Maust v. Colvin*, No. 5:13-CV-02353, 2014 WL 4852064, *7 (N.D. Ohio Sept. 29, 2014)). Concluding, Defendant maintains that the ALJ gave ample and well supported reasons for declining to assign Dr. Snyder's opinion more than limited weight. ECF Dkt. #17 at 15.

An ALJ must give controlling weight to the opinion of a treating source if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not

inconsistent with the other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore "'be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied.'" *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he or she rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *8 (6th Cir. 2010). The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *7 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ). However, an ALJ need not discuss every piece of evidence in the administrative record so long as he or she considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 Fed.Appx. 661, 665 (6th Cir. 2004). Substantial evidence can be "less than a preponderance," but must be adequate for a

reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (internal citation omitted).

The ALJ did not fail to comply with the treating physician rule in the instant case because the ALJ provided good reasons for rejecting Dr. Snyder's opinion. Plaintiff's skeletal argument that the ALJ failed to comply with 20 C.F.R. §§ 404.1527(c) and 416.927(c), in which Plaintiff merely states that the ALJ did not mention the nature and extent of the treatment relationship and fails to mention any of the other factors that Plaintiff believes the ALJ failed to consider, is without merit. Although courts strongly prefer that an ALJ do so, it is not a requirement that the ALJ address in his decision every factor under 20 C.F.R. § 404.1527(c) when determining the weight to give a medical opinion. *See Adams v. Astrue*, No. 1:07-cv-2543, 2008 WL 9396450, at *3, fn. 5 (citing *Thacker v. Comm'r of Soc. Sec.*, 99 Fed. App'x 661, 665 (6th Cir. 2004)). The ALJ considered the examining relationship and treatment relationship between Plaintiff and Dr. Snyder. The ALJ recognized that Dr. Snyder is Plaintiff's treating physician. Tr. at 21. Moreover, the ALJ went into extensive detail on Dr. Snyder's treatment, discussing such treatment at numerous times throughout the decision. *Id.* at 21, 22, 26, 27, 28, 29. Plaintiff admits that the ALJ considered the supportability and consistency of Dr. Snyder's opinion. ECF Dkt. #16 at 15. There is no mention of how Plaintiff thinks the ALJ mishandled the specialization factor or what other factors the ALJ should have considered, as per 20 C.F.R. § 404.1527(c), and the court will not substitute *sua sponte* its own arguments where none have been posed by Plaintiff. 20 C.F.R. § 416.927(c) contains the same factors as 20 C.F.R. § 404.1527(c), and need not be addressed separately.

Plaintiff next contends that the ALJ's analysis of the supportability and consistency of Dr. Snyder's opinion are couched in vague terms. The ALJ states, in part, "the limitations identified by Dr. Snyder are out of proportion with the remaining objective evidence contained in the record, including objective and diagnostic testing, as well as [Plaintiff's] own daily activities" and that Plaintiff remained "fairly stable with medication." Tr. at 29. Prior to making these statements, the ALJ provided a detailed walkthrough of the medical record, as well as specifically addressing the portions of the medical record attributed to Dr. Snyder. The ALJ addressed numerous pieces of medical evidence in the record that limit Plaintiff to a much lesser degree than Dr. Snyder's opinion.

-13-

For example, the ALJ addresses the opinion of Dr. Evans, which indicates that Plaintiff: had a good appearance; easily established and maintained rapport; had no tangential speech during the evaluation; answered all questions fully; was understandable at all times; had consistent affect and mood; was experiencing an improvement in her depression; showed no evidence of psychosis; was oriented to person, place, and time; had adequate insight and judgment; and was generally functioning pretty well and had some meaningful interpersonal relationships. Tr. at 21. Continuing, the ALJ indicated that Plaintiff met with Dr. Snyder in January 2012, and Dr. Snyder reported "some memory problems," that Plaintiff's depression was improving, that she had a flat affect, and had good insight and judgment. *Id.*  The ALJ next indicated that in February 2013, Dr. Snyder opined that Plaintiff's memory loss was related to her anxiety, medications, and pain. *Id.* at 22.

The ALJ then discussed Plaintiff's activities of daily living, level of social functioning, limitations in concentration, persistence, or pace, and periods of decompensation. Tr. at 22. The ALJ's discussion of these topics has been address above, and will be addressed only briefly here. The ALJ Determined that Plaintiff had only mild limitations in activities of daily living, which included cooking, cleaning, banking, part-time employment, and hobbies. *Id.*  Next, the ALJ outlined Plaintiff's limitations in social functioning, discussing Plaintiff's hobbies, contact with friends and organizations, and ability to work with supervisors and co-workers. *Id.* Moving on, the ALJ indicated that Plaintiff only experienced mild limitations in concentration, persistence, or pace, indicating that Plaintiff would not appear to have any difficulties in understanding, remembering, and carrying out simple to moderately complex instructions in the work place. *Id.*  The ALJ stated that Plaintiff did not experience any episodes of decompensation of extended duration. *Id.* at 23. The ALJ based these assessments off of the psychological evaluation conducted by Dr. Evans. *See id.* at 21-22.

The ALJ discussed the opinion of examining physician Dr. Mervart. Dr. Mervart stated that upon examination, Plaintiff's showed no point tenderness over her spine, with decreased flexion. Tr. at 26. The ALJ indicated that Plaintiff showed a full range of motion in the hips, and that she could perform full straight leg raises, had normal muscle bulk, tone, and power, and that Plaintiff's sensation was intact. *Id.*  Continuing, the ALJ noted that the Plaintiff underwent an x-ray procedure

-14-

and a MRI, and following the MRI, treatment recommendations made to Plaintiff included self-administered range of motion type exercises, strengthening, pain management, and to consider epidural procedures. *Id.* The ALJ discussed Nurse Gaddis' notes indicating that Plaintiff had full strength in her upper and lower extremities, her nerve root signs were negative, and that there was no swelling or warmth in Plaintiff's left leg. *Id.*

The ALJ stated that the March 2012 visit to Dr. Snyder resulted in an epidural, and that Plaintiff's straight leg raises were normal and that she had negative triggers. Tr. at 26-27. Next, the ALJ discussed the opinion of Phillippe G. Berenger, M.D., who performed a lumbar facet joint medical branch nerve block, assessed Plaintiff with lumbosacral spondylosis without myelopathy and facet arthritis of her lumbar region. *Id.* at 27. The ALJ noted the Dr. Berenger recommended, as a treatment plan, to consider another lumbar facet joint medical branch nerve block when symptoms reoccur. Finally, the ALJ indicated that consideration had been given to the state agency medical consultants, and that the opinions as generally consistent with the evidence of record. Tr. at 28.

Following the above discussion, the ALJ addressed Dr. Snyder's opinion. Given this context, as provided by the ALJ, his statement that "the limitations described by Dr. Snyder are out of proportion with the remaining objective medical evidence contained in the record" are not vague. The ALJ cites a number of medical opinions, none of which suggest that Plaintiff's limitations are as severe as the limitations presented by Dr. Snyder. Accordingly, the ALJ properly found that Dr. Snyder's opinion was not supported by substantial evidence in the record because it was inconsistent with other substantial evidence in the record. *Wilson*, 378 F.3d at 544.

Additionally, the ALJ stated, "the treatment record showed that [Plaintiff] remained fairly stable with medication and there is nothing in Dr. Snyder's own examination of [Plaintiff] that would support such limitations." Tr. at 29. Plaintiff asserts that the ALJ did not cite to the record to support this statement, however, as described above, the ALJ had already provided a lengthy analysis, often discussing Plaintiff's condition. It would certainly be preferable if the ALJ had again summarized issues why he believed the treatment record showed that Plaintiff remained fairly stable with medication, but it is not required. Substantiality is based upon the record taken as a whole.

-15-

*Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984). As discussed above, when taken as a whole, the ALJ properly found that Dr. Snyder's opinion was not supported by substantial evidence in the record. Accordingly, any error made by the ALJ in failing to properly cite to the record to support the determination that Plaintiff remained fairly stable with medication was harmless.

Finally, regarding the weight afforded to the state agency reviewing physicians, the ALJ did explain why he afforded significant weight to the opinions of the state agency physicians. The ALJ determined that the opinions of the state agency physicians were consistent with the evidence in the record after discussing the evidence at length. Tr. at 28. Specifically, the ALJ indicated that evidence supported that Plaintiff was more restricted and that she was limited to frequently manipulate with use of the bilateral upper extremities for reaching, handling, and fingering. Additionally, the ALJ stated that Plaintiff was limited to only occasional use of bilateral lower extremities for operation of foot controls due to peripheral neuropathy in her feet. For these reasons, the ALJ assigned significant weight to the opinions of the state agency physicians. *Id.*

For the above reasons, Plaintiff's first assignment of error fails.

### B.     Assignment of Error Two

Plaintiff's second assignment of error asks:

> Whether the administrative law judge erred in his evaluation of pain and fatigue where he looked for objective evidence of the pain and failed to consider the factors described in the regulations in his evaluation?

ECF Dkt. #16 at 1.

Plaintiff argues that the ALJ's decision failed to consider the factors described in the regulations when evaluating Plaintiff's pain and fatigue. ECF Dkt. #16 at 18-20. This is a credibility determination, as indicated by Plaintiff. *Id.* at 18. Defendant asserts that Plaintiff is asking the Court to re-weigh the evidence despite finding that the ALJ's decision was based on substantial evidence. *See* ECF Dkt. #17 at 17. The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d at 937 (citing *Richardson v. Perales*, 402 U.S. at 401) (internal citation omitted).

The ALJ determined that Plaintiff's credibility regarding the intensity, persistence, and limiting effects of her symptoms was not well supported by the objective medical evidence in the record, and found that Plaintiff's testimony was not fully credible. Tr. at 28. The objective medical evidence relied upon by the ALJ in making his credibility determination is the same medical evidence relied upon by the ALJ when making his determination that Dr. Snyder's opinion should be provided limited weight. The Court has already determined that the ALJ properly relied upon substantial evidence when determining the weight to assign to the opinion of Plaintiff's treating physician. Plaintiff's testimony regarding her limitations is more restrictive than the RFC limitations the Court has already determined to be proper and supported by substantial evidence since the ALJ properly weighed the opinion of Dr. Snyder when making the RFC determination. The ALJ relied on the same substantial evidence when weighing Plaintiff's credibility. Accordingly, the Court finds that the ALJ properly weighed Plaintiff's credibility.

Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found Plaintiff disabled. The Court has determined that the ALJ's decision was supported by substantial evidence, and thus the ALJ's decision, as the final decision of the Commission, must be affirmed.

## **VII. CONCLUSION**

For the foregoing reasons, the Court AFFIRMS the ALJ's decision and DISMISSES Plaintiff's complaint in its entirety with prejudice.

Date: February 24, 2016
  */s/George J. Limbert*
  GEORGE J. LIMBERT
  UNITED STATES MAGISTRATE JUDGE